**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| TIDAL ARK TECHNOLOGIES, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. ____________________ |
| | § | |
| POINT OF CARE NETWORK, LLC, | § | |
| | § | |
| Defendant. | § | |

**NOTICE OF REMOVAL FROM THE**
**DISTRICT COURT OF BURNET COUNTY, TEXAS**

Pursuant to 28 U.S.C. §§ 1332 and 1446, Defendant Point of Care Network, LLC ("POCN") respectfully gives notice of removal, and hereby removes to the United States District Court for the Western District of Texas, Austin, Division, the state court action described below. In support of this removal, POCN states as follows:

1. POCN is a limited liability company organized under the laws of the state of Delaware, with its principal place of business located Parsippany, New Jersey.

2. On or about October 22, 2020, Tidal Ark Technologies, LLC ("Tidal Ark"), a limited liability company organized under the laws of the state of Texas and with a principal place of business in Bertram, Texas, initiated the lawsuit captioned *Tidal Ark Technologies, LLC v. Point of Care Network, LLC*, Cause No. 51553 in the 33rd District Court of Burnet County, Texas (the "State Case").

3. A true and correct copy of Tidal Ark's Petition as e-mailed to POCN's counsel on October 22, 2020 is attached as **Exhibit 1**.

4. Attached as **Exhibit 2** is a true and correct copy of the State Case docket, which shows that the only documents filed in the State Case to date are the Petition and the Citation.

5. POCN is filing this Notice of Removal within 30 days of receipt of Plaintiff's Petition, pursuant to 28 U.S.C. § 1446(b).

6. Upon information and belief, no other pleadings have been served and no orders have been entered in the State Case except for those documents attached to this Notice of Removal.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and POCN, and because the amount in controversy exceeds $75,000.00, as more fully described herein.

8. Plaintiff's Petition alleges, and therefore judicially admits, that Plaintiff is a Texas limited liability company with its principal place of business located in Bertram, Texas. (Petition at ¶ 2).[1]

9. The amount in controversy in this case exceeds $75,000.00, as evidenced by Plaintiff's Petition:

a. Alleging that "Plaintiff seeks monetary relief over $100,000 but not more than $200,000." (Petition at ¶ 5); and

a. Alleging that "Plaintiff has sustained damages of $100,000.00 in excess of this Court's jurisdictional minimum, as a result of the actions and/or omissions of Defendant described hereinabove." (Petition at ¶16).

10. Pursuant to 28 U.S.C. § 1446(d), POCN will file a copy of this Notice of Removal with the Clerk of the Court in the State Case, as well as serve a copy on all parties to the State case.

11. POCN respectfully reserves all rights, defenses, affirmative defenses, and claims.

[1] POCN's references to Plaintiff's Petition are solely for the purpose of showing that the requirements for removal under 28 U.S.C. § 1446 are satisfied. POCN expressly reserves all rights to deny and/or challenge all allegations in Plaintiff's Petition.

DATED: November 20, 2020.

Respectfully submitted,

WALLER LANSDEN DORTCH & DAVIS LLP

By: */s/ Cleveland R. Burke*
Cleveland R. Burke
State Bar No. 24064975
100 Congress Avenue, Suite 1800
Austin, Texas 78701
Tel: (512) 685-6400
Fax: (512) 685-6417
cleveland.burke@wallerlaw.com

ATTORNEYS FOR DEFENDANT
POINT OF CARE NETWORK, LLC

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2020, the foregoing notice was served on the following counsel of record in the State Case via CM/ECF:

John M. Kuker
Henson & Rockafellow, PLLC
117 E. Jackson Street
Burnet, TX 78611
john@hillcountrylegal.com
*Attorney for Plaintiff*
*Tidal Ark Technologies, LLC*

*Cleveland R. Burke*
Cleveland R. Burke

# EXHIBIT 1

Filed: 10/22/2020 4:37 PM
Casie Walker, District Clerk
Burnet County, Texas
By: Amy Tippie, Deputy

NO. 51553

| | | |
|---|---|---|
| **TIDAL ARK TECHNOLOGIES, LLC** | § | **IN THE DISTRICT COURT** |
| **Plaintiff,** | § | Burnet County - 33rd District Court |
| | § | |
| **V.** | § | ~~**33RD / 424TH JUDICIAL DISTRICT**~~ |
| | § | |
| **POINT OF CARE NETWORK, LLC** | § | |
| **Defendant.** | § | **OF BURNET COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Tidal Ark Technologies, LLC, hereinafter called Plaintiff, complaining of and about Point of Care Network, LLC, hereinafter called Defendant, and for cause of action shows unto the Court the following:

### DISCOVERY CONTROL PLAN LEVEL

1. Plaintiff intends that discovery be conducted under Discovery Level 2.

### PARTIES AND SERVICE

2. Plaintiff, Tidal Ark Technologies, LLC, is a Limited Liability Company whose address is 1500 Greystone Ranch Rd., Bertram, Texas 78605.[1]

3. Defendant Point of Care Network, LLC, a Limited Liability Company based in New Jersey, may be served with process by serving the registered agent of said company, Capitol Services, LLC., 1675 S. State St. Ste. B, Dover, DE 19901. Service of said Defendant as described above can be effected by personal delivery.

[1] There are clerical and/or scrivener's errors in the agreement at issue which sometimes incorrectly refer to Tidal Ark as a corporation rather than a limited liability company. As reflected in all corporate records and state filings, Tidal Ark Technologies has only ever existed as a Texas LLC.

## JURISDICTION AND VENUE

4.     The subject matter in controversy is within the jurisdictional limits of this Court.

5.     Plaintiff seeks monetary relief over $100,000 but not more than $200,000.

6.     This Court has jurisdiction over the parties as Plaintiff Tidal Ark Technologies is a Texas resident entity who contracted with Defendant, and part of the contract was to be performed in Burnet, County, Texas. *See also P. 9 below.*

7.     Venue in Burnet County is permissive in this cause under Section 15.035(a) of the Texas Civil Practice and Remedies Code because *inter alia* this lawsuit involves a written contract to be partially performed in Burnet County, and Plaintiff is an entity resident of Burnet, County, Texas.

8.     Defendant similarly has the requisite and necessary legally sufficient minimum contacts with the State of Texas so as to comport with the Texas Long Arm statute. *Section 17.042 of the Civil Practice and Remedies Code* states that "[i]n addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident: Contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state; Commits a tort in whole or in part in this state; or recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state. Additionally, the applicable agreement expressly provides for Texas law to govern any disputes.

## FACTUAL ALLEGATIONS

9.     On August 24, 2018, Tidal Ark Technologies, LLC. entered into an Asset Purchase Agreement ("Agreement") with Point of Care Network, LLC, providing that Tidal Ark would sell, convey, transfer and assign to Purchaser, free and clear of all liens, charges,

encumbrances, debts, obligations and liabilities whatsoever, all of the Seller's right, title and interest in and to the assets of the Business, which incudes but is not limited to client contracts, intellectual property, hardware, hosting arrangements, customer lists, equipment, telephone numbers, all intangible rights, including but not limited to all goodwill in or arising from the Business as a going concern (collectively, the "Assets"). For consideration and payment, Defendant Point of Care Network, LLC was to pay the Seller one hundred thousand dollars ($100,000) after two years from the date of the executed Purchase Agreement, if all assets listed in Section 1 of the Purchase Agreement were successfully transferred to Buyer. *See Ex. 1 – Asset Purchase Agreement.*

10. The Agreement was executed on August 24, 2018, and the $100,000.00 payment outlined above was due and payable by Defendant to Plaintiff on August 24, 2020. Despite notice and an opportunity to cure the default and contractual breach, Defendant refuses to make said payment and is in material breach of its contractual obligations with Plaintiff as fully outlined herein.

**BREACH OF CONTRACT**

11. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

12. All conditions precedent to the performance of Point of Care Network, LLC under the Contract have been met.

13. The contractual obligations of Tidal Ark Technologies, LLC. have been fully performed.

14. Defendant POCN has failed to perform its contractual obligations, specifically, Defendant failed to pay the Seller one hundred thousand dollars ($100,000) two years after the

execution of the Purchase Agreement.

15. Defendant's breach of contract described hereinabove has injured Plaintiff, causing monetary damages and forcing Plaintiff to incur legal fees and costs.

## DAMAGES

16. Plaintiff has sustained damages of $100,000.00 in excess of this Court's jurisdictional minimum, as a result of the actions and/or omissions of Defendant described hereinabove.

## ATTORNEY'S FEES

17. Request is made for all costs and reasonable and necessary attorney's fees incurred by or on behalf of Plaintiff herein, including all fees necessary in the event of an appeal of this cause to the Court of Appeals and the Supreme Court of Texas, as the Court deems equitable and just.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff, Tidal Ark Technologies, LLC, respectfully prays that the Defendant be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendant for damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which the Plaintiff may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

Henson & Rockafellow, PLLC

By: ______________________

John M. Kuker
Texas Bar No. 24117986
Email: john@hillcountrylegal.com
117 E. Jackson St.
Burnet, TX 78611
Tel. (512) 756-4100
Fax. (512) 756-2900
Attorneys for Plaintiff
Tidal Ark Technologies, LLC

EXHIBIT
1
exhibitsticker.com

## ASSET PURCHASE AGREEMENT

**THIS ASSET PURCHASE AGREEMENT** (the "Agreement") is made on August 24th, 2018 by and between Tidal Ark Technologies, Inc, a limited liability company with offices located at 4511 W. Alabama, Houston, TX 77027 (the "Seller") and Point of Care Network, LLC a New Jersey Limited Liability Company with located at 4 Campus Drive, Suite 302 Parsippany, NJ 07054 (the "Purchaser"). The parties are referred to singularly as "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS**, Seller owns and operates Tidal Ark Technologies, Inc., a content optimization company (the "Business");

**WHEREAS**, Seller has agreed to sell and Purchaser has agreed to purchase substantially all of the assets of the Business, upon the terms and conditions contained in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## TERMS AND CONDITIONS

### SECTION 1. Sale Of Assets

1.1 Assets. Subject to the other provisions of this Agreement, as of the Closing Date, defined in Section 2, Seller shall sell, convey, transfer and assign to Purchaser, free and clear of all liens, charges, encumbrances, debts, obligations and liabilities whatsoever, all of the Seller's right, title and interest in and to the assets of the Business, as set forth on Exhibit A, attached hereto and made a part of this Agreement, which includes but is not limited to client contracts, intellectual property, hardware, hosting arrangements customer lists, equipment, telephone numbers, all intangible rights, including but not limited to all goodwill in or arising from the Business as a going concern (collectively, the "Assets").

### SECTION 2. Closing Date

The closing of the purchase and sale provided for herein (the "Closing Date") will take place at any location agreed to by the parties on August 24, 2018. The Parties will be responsible for their respective legal and professional fees associated with this purchase and sale unless otherwise indicated in this Agreement.

### SECTION 3. Consideration And Payment

Two years after the date of the fully executed Asset Purchase Agreement, Buyer agrees to pay the Seller one hundred thousand dollars ($100,000) if all assets listed in Section 1 of this document have been successfully transferred to Buyer.

Buyer will pay Seller a royalty of 10% on revenue from current initiatives, specifically HeartCon and PedCon, that utilize content captured from Nicklaus Children's Hospital and Cedars Sinai

for three years following the sale. No royalties will be paid for new content specialty areas that are a result of new technologies and platform development funded by the Buyer.

**SECTION 4. Assumption Of Liabilities**

Buyer is not assuming any of Seller's debts or other liabilities. Seller will pay all debts and other liabilities, whether now known or unknown, that are or may become a lien on the assets being bought by Buyer.

**SECTION 5. Documents And Other Instruments To Be Delivered On The Closing Date**

5.1 Seller's Obligations. Seller agrees to deliver (or cause to be delivered) to Purchaser on the Closing Date:

(a) a duly executed Bill of Sale conveying the Assets to Purchaser;

(b) a duly executed Affidavit of Title that such Assets are being conveyed free and clear of all liens, charges, encumbrances, debts, obligations and liabilities whatsoever;

(c) any and all assignments, certificates and other instruments of transfer, with full warranty of title, as may be necessary or desirable to transfer all of Seller's right, title and interest in and to all of the Assets to Purchaser, free of all liens or claims; and

(d) Any other documents that may need to be delivered, such as a lease assignment.

5.2 Purchaser's Obligations. Purchaser agrees to deliver to Seller on the Closing Date:

(a) any documents that require Purchaser's signature as well.

**SECTION 6. Seller's Representations And Warranties**

Seller hereby represents and warrants as follows, which representations and warranties shall survive the Closing Date:

6.1 Organization and Good Standing. Seller is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Texas.

6.2 Authority Relative to this Agreement. Seller has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated in this Agreement.

6.3 Binding Obligation. This Agreement is the legal, valid, and binding obligation of Seller, enforceable against Seller in accordance with its terms.

6.4 No Conflict. The signing and delivery of this Agreement by Seller and the performance by Seller of all of Seller's obligations under this Agreement will not:

(a) conflict with Seller's [articles of organization / articles of incorporation or operating agreement / bylaws];

(b) breach any agreement to which Seller is a party, or give any person the right to accelerate any obligation of Seller;

(c) violate any law, judgment, or order to which Seller is subject; or

(d) require the consent, authorization, or approval of any person, including but not limited to any governmental body.

6.5 Broker or Finder's Fee. Seller has not incurred any liability or obligation – whether contingent or otherwise – for a brokerage commission, a finder's fee, or any other similar payment in connection with this Agreement or the transaction. If Seller has incurred or will incur such a broker or finder's fee, the parties agree that Seller will be solely responsible for payment of any such fee or commission.

6.6 Title. Seller has good and marketable title to all the Assets, free and clear of any liens, mortgages, pledges, security interests, and other encumbrances of any kind.

6.7 Compliance with Laws. Seller has complied with all applicable city, state, and federal laws, ordinances, regulations, and rules with respect to the conduct of its operations, and has not received any notice or notices (whether written or oral) of violations of any such statutes or regulations which have not been cured.

6.8 Litigation. There are no actions, suits, proceedings or investigations pending or threatened against or affecting Seller, the Assets, or the Business.

6.9 Employees. Seller understands that Purchaser has no employees.

6.10 Financial Statements . The financing statements for the Business, including but not limited to statements and balance sheets, fairly present the results of operation and the financial condition of the Business, and have been prepared in accordance with accrual accounting as necessary to prepare annual tax returns -, consistently applied. The financial statements properly reflect all assets and liabilities as then in existence, including but not limited to any accounts receivable.

6.11 Conduct of Business. Seller has operated the Business in the ordinary course consistent with past practices and there has been no adverse material change in the Business. Seller has not accrued debts on behalf of the Business or disposed of any assets of the Business, other than those debts accrued in the ordinary course of business.

6.14 Taxes. All tax returns of every kind (including returns of real and personal property taxes, intangible taxes, withholding taxes, and unemployment compensation taxes) relating to the Business that Seller was required to file in accordance with any applicable law have been duly filed, and all taxes shown to be due on such returns have been paid in full.

6.15 Disclosure. No representation, warranty, or statement made by Seller in this Agreement or in any Exhibit to this Agreement contains or will contain any untrue statement or omits or will omit any fact necessary to make the statements contained herein or therein not misleading. Seller has disclosed to Purchaser all facts that are material to the financial condition, operation, or prospects of the Business, the Assets, and the Assumed Liabilities.

**SECTION 7. Purchaser's Representations And Warranties**

Purchaser hereby represents and warrants as follows, which representations and warranties shall survive the Closing Date:

7.1 Organization and Good Standing. Purchaser is Limited Liability Company duly organized and validly existing under the laws of the State of New Jersey.

7.2 Authority Relative to this Agreement. The execution and performance of this Agreement by Purchaser has been duly and validly authorized by all necessary action on the part of Purchaser. Purchaser has full power and authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.

**SECTION 8. Covenants of Seller Prior to the Closing Date**

Seller agrees that prior to the Closing Date, Seller will:

8.1 continue to operate the Business in its usual and ordinary course and in substantially the same manner as presently conducted and consistent with the past practices of Seller, in accordance with all applicable city, state, and federal laws, ordinances, regulations, and rules, and will use its best efforts to preserve its business organization and continued operation of its business with its customers, suppliers, and others having a business relationship with Seller;

8.2 not assign, sell, lease, or otherwise transfer or dispose of any of the Assets used in the performance of its business, whether now owned or hereafter acquired, except in the ordinary course of business;

8.3 maintain all the Assets in their present condition, reasonable wear and tear excepted, and maintain the inventory at levels as normally maintained in the ordinary course of business;

8.4 notify Purchaser promptly of any material change or loss in the business prospects, financial condition, assets, liabilities, or operations of the Business;

8.5 provide reasonable access for Purchaser and Purchaser's representatives to the Business, including but not limited to the property, personnel, books, papers, records, clients, and suppliers relating to its operations, assets, and liabilities, on an as needed basis in order to complete a due diligence investigation (but only for this purpose) to the sole satisfaction of the Purchaser and Purchaser's representatives;

8.6 perform all of Seller's liabilities and obligations under all contracts to which Seller is a party; and

8.7 notify Purchaser of any breach by Seller of any representation, warranty, or covenant in this Agreement.

**SECTION 9. Covenants of Seller After the Closing Date**

Seller agrees that after the Closing Date, Seller will:

9.1 will make all filings, give all notices, and transfer all accounts that Purchaser is required to make and give to close the transaction contemplated in this Agreement; and

9.2 perform such other tasks as outlined in this Agreement to ensure the smooth transition of ownership and continued successful operation of the business.

**SECTION 10. Conditions to Purchaser's Closing Date Obligations**

Purchaser's obligation to close this transaction and purchase the Assets is subject to satisfaction, in Purchaser's reasonable discretion, of the following conditions:

10.1 Purchaser obtaining all licenses, approvals, permits, and waivers from the public authorities necessary to authorize the ownership and operation of the Business;

10.2 Other documents that need to be successfully negotiated

10.3 Other documents that Seller must give to Purchaser

10.4 the Business has not suffered any material adverse change, in Purchaser's sole discretion, in the business prospects, financial condition, assets, liabilities, or operations.

**SECTION 11. Best Efforts**

Each party shall use its best reasonable efforts to take all action and to do all things necessary, proper, and advisable, including obtaining all necessary approvals required to authorize the execution and delivery of this Agreement, in order to consummate and make effective the transactions contemplated by this Agreement.

**SECTION 12. Taxes**

Seller shall be responsible for and pay any and all sales, use, real property transfer taxes, or other taxes due and payable on and after the Closing Date arising in connection with the sale by Seller of the Assets and the acquisition thereof by Purchaser, including without limitation taxes imposed in connection with Seller, the Business, or the Assets for all taxable periods (or portions thereof) ending on or prior to the Closing Date. Seller shall remit and file such taxes, including any and all necessary returns and reports, to the appropriate governmental agency in a timely manner.

**SECTION 13. Termination**

13.1 Termination. This Agreement may be terminated by written notice at any time prior to or on the Closing Date:

(a) by mutual written agreement of Seller and Purchaser;

(b) by Purchaser, in the event that there has been a material misrepresentation in this Agreement by Seller, or a material breach of any of Seller's representations, warranties or covenants set forth herein; or

(c) by Seller, in the event that there has been a material misrepresentation in this Agreement by Purchaser, or a material breach of any of Purchaser's representations, warranties or covenants set forth herein.

13.2 Effect of Termination. In the event of termination of this Agreement as provided in Section 13.1, this Agreement shall become void and of no further force and effect, without any liability or obligations on the part of Purchaser or Seller.

**SECTION 14. Press Release**

Purchaser and Seller will draft a press release regarding the transaction contemplated in this Agreement for distribution to customers, suppliers, and the general public that introduces and endorses Purchaser, which will be signed on the Closing Date by the parties. Any news release pertaining to the transaction contemplated in this Agreement shall be reviewed and approved by both parties prior to its release.

**SECTION 15. Non-Competition; Non-Solicitation**

For a period of three (3) years from the Closing Date, provided Purchaser is not in default, Seller, or any other entity owned in full or part by Seller or Seller's owners shall not:

15.1 directly or indirectly advise, invest in, own, manage, operate, control, be employed by, provide services to, lend money to, guarantee any obligation of, lend Seller's or Seller's owners name to, or otherwise assist any person engaged in or planning to be engaged in any business whose products, services, or activities compete or will compete in whole or in part with Seller's products, services, or activities as defined in Exhibit C.

15.2 solicit any employee of Purchaser to become an employee or independent contractor of Seller or any other person or entity, or suggest to any employee that they should reduce or terminate their employment relationship with Purchaser; and

15.3 solicit any supplier, customer, or other business relationship of Purchaser to become a business relation of Seller or Seller's owners, or suggest to a business relationship of Purchaser that the business relation should reduce or terminate the business relation's business or relationship with Purchaser.

**SECTION 16. Indemnification**

16.1 Seller's Indemnification. Seller hereby agrees to indemnify, defend, and hold Purchaser and its affiliates, assigns, directors, employees, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations, and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to:

(a) Seller's breach of the representations, warranties, covenants, or other obligations of Seller made in this Agreement or any other agreement or document relating to this transaction;

(b) Seller's breach of any liabilities or obligations of Seller in connection with the use, ownership, condition, maintenance, or operation of the Business or the Assets by Seller or its members on or before the Closing Date;

(c) any and all third-party claims arising out of the ownership, use and operation of the Assets, and the operation of the Business prior to the Closing.

16.2 Purchaser's Indemnification. Purchaser hereby agrees to indemnify, defend, and hold Seller and its assigns, directors, members, managers, partners, officers, and authorized representatives harmless from and against any and all claims, liabilities, obligations, costs, taxes, fees, wages, financial obligations, and expenses of every kind, including reasonable attorney fees, whether known or unknown, arising out of or related to:

(a) Purchaser's breach of the representations, warranties, covenants or other obligations of Purchaser made in this Agreement or any other agreement or document relating to this transaction;

(b) Any liabilities or obligations of Purchaser, including the Assumed Liabilities, in connection with the use, ownership, condition, maintenance, or operation of the Business or the Assets by Purchaser after the Closing Date.

16.3 Notice of Claim. If any claim is asserted against a party that would give rise to a claim by that party against the other party for indemnification under the provisions of this Section, then the party to be indemnified will promptly give written notice to the indemnifying party concerning such claim and the indemnifying party will, at no expense to the indemnified party, defend the claim.

**SECTION 17. General Provisions**

17.1 Notices. All notices required under this Agreement shall be in writing, and shall be deemed duly given (a) when delivered, if delivered personally, (b) at the end of the day after deposit if sent by overnight express courier service, or (c) at the end of the third business day after deposit if sent by registered or certified mail, return receipt requested and postage prepaid, to the parties as set forth in the signature page below, or at such other address as may be supplied by similar written notice, or (d) when sent, if by email.

17.2 Amendment; Waiver. This Agreement may not be amended, nor may any rights under it be waived except by an instrument in writing signed by both parties.

17.3 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas applicable to agreements made and to be performed wholly within such jurisdiction, without giving effect to the provisions, policies or principles thereof relating to choice or conflict of laws.

17.4 Binding Effect. Except as provided otherwise herein, this Agreement shall be binding upon and shall inure to the benefit of the parties and their respective legal representatives, successors and assigns.

17.5 Severability. If a provision of this Agreement is determined to be unenforceable in any respect, the enforceability of the provision in any other respect and of the remaining provisions of this Agreement will not be impaired.

17.6 Headings. The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning of this Agreement.

17.7 Expenses. All fees and expenses incurred by each party in connection with this Agreement and the transaction contemplated in this Agreement shall be borne by that party.

17.8 Survival. All provisions of this Agreement that would reasonably be expected to survive the termination of this Agreement will do so.

17.9 Attachments. All exhibits and other attachments referenced in this Agreement are part of this Agreement.

17.10 Entire Agreement. This Agreement constitutes the entire agreement among the parties and supersedes any prior agreement or understanding among the parties concerning its subject matter.

17.11 Assignment. This Agreement may not be transferred, assigned, pledged or hypothecated by either party without the prior written consent of the other party.

17.12 Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which shall constitute one agreement. Furthermore, this Agreement may be executed by a party's signature transmitted by facsimile or by electronic mail, and copies of this Agreement executed and delivered by means of faxed or electronic mail shall have the same force and effect as copies hereof executed and delivered with original signatures. All parties hereto may rely upon faxed or electronic mail as if such signatures were originals.

[Signature page to follow]

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement to be effective as of the day and year first written above.

Seller:

Tidal Ark Technologies, Inc,

______________________________ Name: Mark Sangster
Title: President

Address: 4511 W. Alabama, Houston, TX 77027

Purchaser:

**Point of Care Network LLC**

______________________________ Name: Richard Zwickel
Title: CEO

Address: 4 Campus Drive, Suite 302 Parsippany, NJ 07054

**Exhibit A**

The assets being sold consist of:

1. The following client contracts
   a. Agreement between Nicklaus Children's Hospital/Miami's Children's Hospital and Hendrik Information Systems LLC, aka TAT, dated January 16, 2013.
   b. Agreement between Cedar Sinai Medical Center and TAT, dated .
   c. Agreement between Houston Methodist Hospital System and Hendrik LLC, aka TAT, dated June 28, 2012.
   d. Agreement between New York University Langorn Medical Center and Hendrik Information Systems LLC, aka TAT, dated April 8th, 2014

2. All intellectual property and technology including:
   a. Tidal Ark Platform and its player built upon a .Net architecture with a Bootstrap UI interface.
   b. The proprietary .Net/JQuery code for the platform and player (JWPlayer based) developed by Tidal Ark and in proprietary.

3. All documentation related to Seller's business including all sales and development activities.

4. Seller's complete pipeline of all sales leads and opportunities

5. All hardware owned by Seller including:
   a. Two Haivision Makito encoders on free loan to Nicklaus Children's Hospital mobile cart.

6. All hosting arrangements Seller currently has in place including:
   a. Agreement between StreamGuys and TAT
   b. Agreement between DatabaseMart and TAT
   c. Agreement between GoDaddy and TAT
   **d.** Agreement between JWPlayer and TAT

**Exhibit B**

| Initiative Name | Revenue Generated in Most Recent Quarter | Royalty Owed |
| --- | --- | --- |

**Exhibit C**

Competitive business activities of Tidal Ark Technologies include the following:

- Capture and archive of medical professional education content in the pharma/biotech/healthcare industry field.
- Create content using a software-based Multimedia Video Portal (MVP) as well as other electronic formats to assist clients with marketing, revenue growth, training and other goals.
- Distribute digitally created content to medical institutions, hospitals and other companies within the pharma/biotech/healthcare industry.
- Organize and optimize healthcare and medical customer's content and on-line learning communites through its technology platform.

# EXHIBIT 2

## Case Information

51553 | TIDAL ARK TECHNOLOGIES, LLC V. POINT OF CARE NETWORK, LLC

| Case Number | Court | Judicial Officer |
| --- | --- | --- |
| 51553 | 33rd District Court | Garrett, J. Allan |
| File Date | Case Type | Case Status |
| 10/22/2020 | Contract - Consumer/Commercial Debt | Filed |

## Party

Plaintiff
TIDAL ARK TECHNOLOGIES, LLC

Address
1500 GREYSTONE RANCH RD
BERTRAM TX 78605

Active Attorneys
Lead Attorney
KUKER, JOHN M
Retained

Defendant
POINT OF CARE NETWORK, LLC

Address
REGISTERED AGENT, CAPITOL SERVICES, LLC
1675 S. STATE ST. STE. B
DOVER DE 19901

## Events and Hearings

10/22/2020 ORIGINAL PETITION (OCA)

10/23/2020 Citation ▾

Unserved

Anticipated Server
PRIVATE PROCESS SERVER

Anticipated Method
In Person